AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| DONALD R. FRENCH, JR. | ) | Case No. 12-8290-DLB |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

FILED by _____ D.C.

JUL 2 0 2012

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___Jan.1, 2008 to Nov. 30, 2011___ in the county of ___Palm Beach and elsewhere___ in the ___Southern___ District of ___Florida___, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. SECTION 1343 | WIRE FRAUD. The defendant, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire communication in interstate and foreign commerce any writings, signs, signals, pictures or sounds for the purpose of executing such scheme or artifice. |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
*Complainant's signature*

___DANIEL J. SZCZEPANSKI, Special Agent, F.B.I.___
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___07/20/2012___

_____
*Judge's signature*

City and state: ___West Palm Beach, Florida___   ___DAVE LEE BRANNON, U.S. MAGISTRATE JUDGE___
*Printed name and title*

# AFFIDAVIT

## A. INTRODUCTION

I, Daniel J. Szczepanski, having first been duly sworn, do hereby state the following:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), United States Department of Justice. I have been so employed for six and a half years and have worked several complex fraud investigations. I am presently assigned to the Miami Division's Palm Beach Office of the FBI. My duties include the investigation of violations of mail fraud, wire fraud and other sophisticated fraud schemes. Through my experience in the course of these investigations, I have become familiar with ponzi and similar fraud schemes. I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code (USC), §2510 (7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, USC §1343.

2. The following information is based on my review and analysis of financial records, interviews of victims, my personal knowledge, discussions with fellow agents, and debriefings of a cooperating witness. Where the statements of others are related herein, they are related in substance and in part and not verbatim. Since this affidavit is being submitted for the limited purpose of providing probable cause to support a criminal complaint, I have not set forth every fact resulting from the investigation; rather, set forth is a summary of the investigation to date in order to establish probable cause for the issuance of a criminal complaint charging DONALD RICHARD FRENCH JR with wire fraud, in violation of Title 18, U.S.C. §1343.

**B.   FACTS**

**Evidence of Wire Fraud**

3.  Affiant's investigation has revealed that defendant DONALD RICHARD FRENCH JR. (FRENCH), operated a purported hedge fund, D3 CAPITAL MANAGEMENT, LLC (D3). This hedge fund, incorporated on 03/26/2008, operated out of at least two (2) offices located in Boca Raton, Florida. D3, through FRENCH, solicited victims to invest in the hedge fund through the use of materially false and fraudulent statements. These statements include but were not limited to FRENCH's experience and expertise in financial services and consulting, as well as the manner in which D3 was to be operated and had performed. Investigation to date has revealed that FRENCH solicited, or caused to be solicited, at least 20 investors, who in turn invested over $10 million in D3.

4.  D3 is a classic ponzi scheme. It promised high rates of return, as much as 50%, to investors when in fact it made only minimal, lulling type, payments to some investors. The primary source of those limited payments came from the investments of others. In addition to the high rates of return, D3 represented that only a small management fee, approximately 2% would be charged (albeit additional percentages were to be taken if there were successful investments).

5.  To maintain the aura of success, D3 established an Internet website where investors, who were provided with a user name and personal password for their accounts, were able to review the performance and purported value of their investments. Defendant FRENCH and co-conspirators, placed false and misleading information on each investor's portfolio, this

information indicating that investors were earning high rates of return, when in fact no such returns were realized. Based on a review of records and interviews of victims, defendant FRENCH invested only a small portion of the money entrusted to him by these victims. Instead, the money was used to support FRENCH's lavish lifestyle. Over the several years the scheme to defraud was operated, from approximately January 2008 through November 2011, those personal expenses which were far in excess the stated two (2) percent management fee, included personal check (debit) card purchases totaling in excess of $1.48 million, cash withdrawals of approximately $1.28 million, casino gambling expenses in excess of $565,000, approximately $62,000 in payments for high-end vehicles, as well as other personal expenses.

6. On 07/14/2012, Affiant interviewed FRENCH. Defendant FRENCH admitted to raising over $10 million from investors and then utilizing a substantial portion of investor money on his own personal expenses, including his several Las Vegas gambling trips. Moreover, FRENCH admitted that he knew that spending investor money for his own personal benefit or to pay other investors was illegal. FRENCH also admitted to providing materially false and misleading information on investor profit reports, making it appear as though investor money was yielding a high return. FRENCH acknowledged that the amounts listed on investor profit reports were not actual profits, but instead were false numbers created by FRENCH to lend the appearance to investors that they were earning profits, when in fact they were not. FRENCH also admitted that he actually only invested a small portion of investor money entrusted to him. FRENCH said he was able to induce investors to invest because of his ability to lie and manipulate people through his "gift of gab."

7. Investor A was interviewed pertaining to her investment with FRENCH. Investor A and her husband were introduced to FRENCH and a co-conspirator through a friend. Based on conversations with defendant FRENCH, Investor A believed FRENCH to be investing in, *inter alia*, foreign currencies, emeralds, and an Italian solar project. FRENCH told Investor A that she would earn a rate of return of 50% per year. From on or about 06/09/2008 through 02/11/2011, Investor A wire transferred or caused to be wire transferred from her bank account approximately $1,954,000.

8. Investor A advised that on or about 02/11/2011, FRENCH told her that her initial investment of approximately $954,000 was "tied up", and in order to retrieve her initial investment she needed to invest an additional $1,000,000. Investor A advised affiant that on 02/11/2011 she wire transferred $1,000,000 from a Bank of America branch located in Boston, MA, to a Wachovia bank account, account number _____6829. Defendant FRENCH accompanied her to the bank while she made the wire transfer. This account is an account in the name of D3 CAPITAL MANAGEMENT, LLC, and maintained by FRENCH, who is a signatory on the account. Further, the account, according to bank records, is located within Broward County, FL. Investor A advised affiant that at no time during her investments did she authorize FRENCH to utilize the moneys given to him via the wires for other than for its intended purpose. Moreover, Investor A advised that she would not have invested with FRENCH had she known a majority of her investment would be used to support FRENCH's lavish lifestyle or to pay for his own personal expenses. To date, Investor A's loss is approximately $1,954,000.

9. During the above described interview of defendant FRENCH by affiant, he admitted that the $1,000,000 that he received from Investor A on 02/11/2011 was used to pay off

his gambling debt of approximately $450,000 at the Cosmopolitan Casino in Las Vegas, NV. FRENCH also admitted to affiant that he lied to Investor A that her investment was "tied up." He told affiant that he said that in order to entice Investor A to invest the additional $1,000,000.

10.     Affiant interviewed four (4) additional victims regarding their purported investment with defendant FRENCH. Affiant learned that FRENCH told these investors that they were investing in, *inter alia*, foreign currency and emeralds. Defendant French explained to these investors that they would earn a high rate of return on their investment, as high as 30%. Beginning from on or about 01/18/2008 through 12/30/2010, based on affiant's review of records and victim interviews, these investors wire transferred or caused to be wire transferred approximately $1,684,303.61 to accounts controlled by FRENCH. These victim wire transfers were initiated from their various bank accounts located in the State of Michigan, to the accounts controlled and maintained by defendant FRENCH at Wachovia Bank in Florida. These investors stated that at no time did they authorize FRENCH to utilize their moneys for other than the intended investment purpose. Moreover, these investors advised that they would not have invested with FRENCH had they known a majority of their investment would be used to support FRENCH's lavish lifestyle or to pay for his own personal expenses. To date, these investors have lost approximately $1,321,000.

C. **CONCLUSION**

11. Based on the above facts, Affiant asserts that there is probable cause to believe that DONALD RICHARD FRENCH JR committed wire fraud, in violation of Title 18 U.S.C. §1343.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
Daniel J. Szczepanski, Special Agent, FBI

Sworn to me this

20th day of July, 2012

_____
DAVE LEE BRANNON
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 12-8290-DLB

### BOND RECOMMENDATION

DEFENDANT: DONALD FRENCH

PRE-TRIAL DETENTION

(Personal Surety) (Corporate Surety) (Cash) (<u>Pre-Trial Detention</u>)

By: _____
AUSA: Kerry Baron

Last Known Address: _____

What Facility: _____

Agent(s): Daniel J. Szczepanski
(<u>FBI</u>)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)  (**OTHER**)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-8290-DLB

DONALD FRENCH,
        Defendant.
_____/

CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _____ Yes __X__ No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BY: /s/ Kerry Baron
KERRY BARON
Assistant United States Attorney
Florida Bar No. A5500040
500 S. Australian Avenue, Suite 400
West Palm Beach, FL 33401
TEL: (561) 820-8711
FAX: (561) 805-9846